**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTH DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>AMIT GAURI,<br><br>    Debtor. | Chapter 11<br><br>Case No. 21-03680<br><br>Honorable Janet S. Baer |
| PARENT PETROLEUM, INC.,<br><br>      Plaintiff,<br>  v.<br><br>AMIT GAURI,<br><br>      Defendant. | Adv. Pro. No. _____ |

**ADVERSARY COMPLAINT OBJECTING TO DISCHARGE AND**
**DISCHARGEABILITY OF DEBTS PURSUANT TO 11 U.S.C. §§ 727(a) AND 523(a)**

Parent Petroleum, Inc. ("Parent"), by and through its undersigned counsel, files this

Complaint against Defendant/Debtor, Amit Gauri, to obtain an order and judgment: (i) denying

the Defendant a discharge pursuant to 11 U.S.C. § 727(a); and (ii) declaring Defendant's debt to

Parent nondischargeable pursuant to 11 U.S.C. § 523(a).  In support of its Complaint, Plaintiff

respectfully states the following:

**I.  JURISDICTION AND VENUE**

1.  This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and (J).

2.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  The statutory bases for this action are 11 U.S.C. §§ 727(a)(2), (3), (4), (5), (6),

and (7) and 523(a)(2)(B).

## II.  PARTIES

4.      Plaintiff, Parent, is a corporation organized and existing under the laws of the state of Illinois, with its principal place of business located at 3340 W. Main Street, St. Charles, Illinois, 60175.

5.      Amit Gauri, the Defendant, is a citizen and resident of the state of Illinois, residing at 330 West Concord Place, Chicago, IL 60614.

6.      On March 22, 2021 (the "Petition Date"), Gauri filed a voluntary petition for relief under chapter 11 of Title of the United States Code, 11 U.S.C. §§ 101-1330, in the United States Bankruptcy Court for the Northern District of Illinois.

## III.  BACKGROUND FACTS

**A.      The History of Black Dog, Gauri, and Parent.**

7.      Parent is a family-owned business that specializes in the sales and service of petroleum, oil and lubricant products to retail, commercial and industrial customers throughout Illinois and the Tri-State area.

8.      Gauri currently owns 80.01% of the Black Dog Chicago, LLC ("Black Dog") through his wholly-owned company Black Dog Commercial Ventures, Corp.

9.      Black Dog Chicago Corp. ("BD Corp.") is the predecessor to Black Dog and began operating in 2006.

10.     Black Dog is a certified Minority Business Enterprise and, since 2012, has been in the business of distributing and supplying fuel, oil, and lubricant products.

11.     Parent began selling fuel and lubricant products to Black Dog in 2012.

12.     By August 2016, Black Dog was in default of its obligations, and the outstanding receivables owed to Parent had grown to approximately $4,847,439.05 before interest.

13.   On August 22, 2016, Parent and Black Dog entered into an agreement, a copy of which is attached hereto and incorporated herein as **Exhibit 1** (the "Agreement"), for the payment of outstanding receivables in favor of Parent, which Black Dog acknowledged as due and owing for the sale of lubricating oil, fuel and related product ("Product"), and the future sale of Product by Parent to Black Dog.

14.   Under the Agreement, Black Dog was required to pay Parent as follows:

    a.   One Million ($1,000,000) Dollars no later than August 31, 2016;

    b.   One Million Five Hundred Thousand ($1,500,000) Dollars no later than October 1, 2016; and

    c.   "The sum of no less than Fifty Thousand ($50,000) Dollars per week (**which [Black Dog] has commenced**), until the balance of the Accounts/Debt owed to Parent is less than Five Hundred Thousand ($500,000) Dollars. . ." [Emphasis in original.]

15.   With respect to the future shipment of Product, Black Dog agreed to the following under the Agreement:

    a.   With respect to fuel (gasoline and/or diesel), Black Dog would have a credit limit of $100,000.00 with all purchases to be paid in full within 10 days of delivery. If any receivable was more than ten days old, then Black Dog agreed to pay interest at the prevailing prime interest as published in the Wall Street Journal plus an additional two percentage points (2.0%). *See* **Exhibit 1**, p. 2.

    b.   With respect to automotive lubricating products, Black Dog would have a credit limit of $400,000.00 with all purchases to be paid in full within 60 days of delivery. If any receivable was more than 60 days old, then Black Dog agreed to pay interest at the prevailing prime interest rate as published in the Wall Street Journal. If any receivable was more than 90 days old, Black Dog agreed to pay interest at the prevailing prime interest as published in the Wall Street Journal plus an additional two percentage points (2.0%). *See* **Exhibit 1**, p. 2.

16.   Under the Agreement, Black Dog granted Parent a purchase money security interest in any Product shipped by or purchased from Parent with such security interest extending

to proceeds from the sale of Product including credit card receipts, debit card charges, gift card charges or any electronic method of transmission of funds, charges or credit.  *See* **Exhibit 1**, pp. 2-3.

17.     Under the Agreement, Gauri personally guaranteed Black Dog's obligations and agreed to indemnify Parent from any and all claims, costs, judgments, awards, fines, and attorneys' fees arising out of or related to the Agreement.  *See* **Exhibit 1**, pp. 4-5.

18.     On August 31, 2016, Black Dog breached the Agreement by failing to make the initial payment of $1,000,000.

19.     On October 1, 2016, Black Dog further breached the Agreement by failing to make the second payment of $1,500,000 and failing to make the weekly payments of $50,000 per week.

20.     As such, Black Dog failed to make all of the required payments.

21.     Beginning in October 2016, Parent began to supply BD Corp. on a cash basis.

22.     Between June and October 2017, Gauri formed several new Illinois limited liability companies, including Black Dog Chicago, LLC, Black Dog Petroleum, LLC ("Black Dog Petroleum"), Black Dog Paving and Concrete, LLC, and Black Dog Commercial Ventures, Corp.  *See* **Composite Exhibit 2**.

23.     In 2017, Gauri caused BD Corp. to begin transferring its operating assets to newly formed subsidiaries.

24.     In September 2017, after Parent refused further credit, Black Dog entered into loan and security agreements with PNC Bank, NA ("PNC"), in the amount of $3.3 million, pursuant to which Black Dog granted PNC a blanket lien in all of its assets.

25.     On December 20, 2017, Parent filed its three-count complaint in the Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois ("State Court"), case no. 2017 L 1392, against Black Dog and Gauri, for breach of contract and fraud, and seeking recovery of the total outstanding receivables owed to Parent, in the current amount of $4,539,229.32, as well as pre-judgment interest and attorney's fees.

26.     On or about January 1, 2018, Gauri caused BD Corp. to merge into Black Dog.

27.     On June 27, 2019, the State Court granted partial summary judgment in favor of Parent, finding that Black Dog breached the Agreement for failure to pay the required amounts under sections 3(A) and 3(B), with the remaining amount of damages to be determined at trial.

28.     The State Court awarded Parent partial summary judgment in the total amount of Two Million Five Hundred Thousand ($2,500,000).

29.     On February 17, 2021, the State Court entered a final and non-appealable final judgment in favor of Parent and against Gauri in the amount of $2,894,808.68.  *See* **Exhibit 3.**

**B.     Black Dog's Bankruptcy Filing.**

30.     On October 4, 2019 (the "Black Dog Petition Date"), Black Dog filed a voluntary petition for relief under chapter 11 of Title of the United States Code, 11 U.S.C. §§ 101-1330, in the United States Bankruptcy Court for the Northern District of Illinois.

31.     The Black Dog bankruptcy filing stayed Parent's State Court case against Black Dog and Gauri.

32.     Gauri signed Black Dog's petition as the Sole Manager and Majority Membership Holder. [Case No. 19-28245, Dkt. No. 1.]

33.     Gauri signed Black Dog's bankruptcy schedules and statement of financial affairs ("SOFA") under penalty of perjury. [Case No. 19-28245, Dkt. Nos. 23, 30, 39, 234, and 267.]

34.    Parent filed a proof of claim for $5,760,302.12. [Case No. 19-28245, Claim 1-2.]

35.    Parent's unsecured claim against Black Dog represents 98% of the general unsecured claims pool.

**i.    Gauri Causes Black Dog to Fail to Disclose the Wintrust Bank Account.**

36.    Black Dog, as successor to BD Corp., owned a bank account at North Shore Community Bank & Trust, a branch of Wintrust Bank, N.A., which account number ends in 5770 (the "Wintrust Account").

37.    Black Dog failed to schedule the Wintrust Account. [*See* Case No. 19-28245, Dkt Nos. 23 and 39.]

38.    Black Dog's bankruptcy schedules failing to disclose the Wintrust Account were signed under oath by Gauri and filed as Docket Numbers 23 and 39.

39.    On or about August 5, 2020, Parent served a subpoena on Wintrust Bank to produce bank statements for Black Dog, Black Dog Petroleum, and Gauri and his non-filing spouse.

40.    Subsequently, Black Dog amended its bankruptcy schedules on September 9, 2020, to disclose the Wintrust Account. [Case No. 19-28245, Dkt. No. 267.]

41.    Black Dog's amended bankruptcy schedule disclosing the Wintrust Account were signed by Gauri under oath at Docket Number 267.

42.    The subpoenaed Wintrust Account statements reveal that in the 7 months between November 1, 2019, and May 30, 2020, Gauri caused Black Dog to transfer:

      a. at least $52,460.21 from the undisclosed Wintrust Account to or for the benefit of Gauri;

b. including $19,525.00 from the undisclosed Wintrust Account to a personal

bank account at North Shore Community Bank & Trust (ending in 3215)

owned by Gauri and his non-filing spouse Jennifer Gauri.

43.     Black Dog also amended its Statement of Financial Affairs on September 30,

2020 [Case No. 19-28245, Dkt. 309], to disclose previously undisclosed insider transfers (the

"Insider Transfers") of:

a. $23,611.84 to Gauri and his non-filing spouse for car and insurance payments;

b. $35,000 to Gauri's non-filing spouse for an "Insider Payment;"

c. $109,334.48 to Gauri for an "Insider Payment;"

d. $114,128.38 to Gauri for "Monthly Payments for Michigan Property and

Chicago rental;" and

44.     The total amount of previously undisclosed Insider Transfers totals $282,074.70.

**ii.     Gauri's Fraudulent PPP Loan Applications.**

45.     In April of 2020, the U.S. Small Business Administration (the "SBA") published

interim rules concerning the implementation of the Paycheck Protection Program ("PPP") under

the CARES Act, which made a business ineligible for a PPP loan if the applicant or the owner of

the applicant is a debtor in a bankruptcy proceeding.[1]

46.     On information and belief, Gauri approached PNC Bank for one or more PPP

loans for Black Dog Petroleum, Black Dog Foods, LLC ("Black Dog Foods") and Black Dog

Solutions, LLC ("Black Dog Solutions") (collectively, the "Subsidiaries") and PNC Bank

declined to issue such loans based on the pending Black Dog bankruptcy case.

---

[1] Interim Final Rule, 13 C.F.R. Parts 120-21, Business Loan Program Temporary Changes; Paycheck Protection
Program – Requirements – Promissory Notes, Authorizations, Affiliation, and Eligibility (RIN 3245-AH37), at p. 8-
9.

47.     Subsequently, Gauri obtained approximately $407,130 in PPP loans (the "PPP Loan Applications" or "PPP Loans") with First Midwest Bank and WebBank for loans on behalf of each of the Subsidiaries.

48.     Question 1 on the SBA's PPP Application Form requires the applicant to disclose if "the Applicant or any owner of the Applicant . . .or presently involved in any bankruptcy?"

49.     The PPP Loan Applications required Gauri to certify that he "unders[tood] that knowingly making a false statement to obtain a guaranteed loan from the SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571…"

50.     Gauri certified under oath that the owner (Black Dog) of the Subsidiaries was not currently in bankruptcy, despite Black Dog's pending bankruptcy proceeding.

51.     Gauri caused Black Dog to file its Third Amended Disclosure Statement and exhibits thereto, including but not limited to the consolidated financial statements attached as Exhibit D thereto, as amended (collectively, the "Third Amended Disclosure Statement") with the Court on August 3, 2020. [Case No. 19-28245, Dkt. Nos. 210, 269.]

52.     Black Dog's Third Amended Disclosure Statement failed to disclose the PPP Loans.

**iii.     Black Dog's Unauthorized Economy Injury Disaster Loan.**

53.     As Black Dog's corporate representative, Gauri entered into an unauthorized post-petition $150,000 loan on or about June 14, 2020, through the SBA's Economic Injury Disaster Loan Program (the "EIDL Loan").[2]

54.     In connection with the EIDL Loan, Gauri granted the SBA an unauthorized post-petition lien on all of Black Dog's assets.

---

[2] *See* SBA EIDL Database Excel file named DATAACT_EIDL_LOANS_20200610-20200625 at https://data.sba.gov/dataset/covid-19-eidl.

55.     Black Dog did not file a motion with the Bankruptcy Court pursuant to Section 364 to obtain post-petition financing or authority to pledge additional collateral of Black Dog.

56.     Black Dog failed to disclose the EIDL Loan proceeds on Black Dog's June 2020 monthly operating report, which Gauri signed under oath. [Case No. 19-28245, Dkt. No. 194.]

57.     Black Dog's Third Amended Disclosure Statement failed to disclose the EIDL Loan. [Case No. 19-28245, Dkt. No. 210.]

58.     Gauri did not deposit the $150,000 in loan proceeds from Black Dog's EIDL Loan into any of Black Dog's bank accounts. [Case No. 19-28245, Dkt. No. 292.]

59.     As of the date of filing this complaint, Gauri has not produced any documents evidencing the disposition of the $150,000 in EIDL loan proceeds.

60.     On information and belief, Gauri diverted the loan proceeds from the EIDL Loan for unauthorized purposes.

**iv.     The Chapter 11 Trustee is Appointed, and the Case Management Procedures Order is Entered.**

61.     After the U.S. Trustee's discovery of the EIDL Loan and the PPP Loans, Black Dog consented to the entry of an order appointing Frances Gecker as Chapter 11 Trustee ("Chapter 11 Trustee") on October 6, 2020. [Dkt. No. 337.]

62.     On October 21, 2020, the Court entered an Order Approving Case Management Procedures (the "Case Management Procedures"). [Case No. 19-28245, Dkt. No. 347.]

63.     The Case Management Procedures required Black Dog Petroleum and Black Dog Foods to provide monthly financial reports to the Chapter 11 Trustee.

64.     The Case Management Procedures also limited the Subsidiaries to:

a.  solely make payments "on account of ordinary course of business trade payables necessary to the continuing operations of their businesses," and

b.  further provided that "absent prior written approval of the Trustee, the Black

Dog Companies will not make payments, distributions or transfers of any kind

to Amit Gauri, any relatives or affiliates of Amit Gauri or any owners of the

[Black Dog.]" [Case No. 19-28245, Dkt. No. 347.]

65.    On March 22, 2021, Gauri caused Black Dog Petroleum to pay $21,717 to Bauch

& Michaels, LLC, the attorneys representing Gauri in his individual bankruptcy case.

66.    The Chapter 11 Trustee did not authorize the $21,717 transfer from Black Dog

Petroleum to Gauri's attorneys of record in his individual bankruptcy case.

67.    On information and belief, Gauri made several other unauthorized transfers in

violation of the Case Management Procedures.

**v.    The Chapter 11 Trustee Discovers Southwind's Undisclosed Factoring
Agreement.**

68.    Promptly following the Chapter 11 Trustee's appointment, Southwind Industries

Inc. ("Southwind") filed a notice of appearance. [Case No. 19-28245, Dkt. No. 352.]

69.    Southwind disclosed to the Chapter 11 Trustee that it purportedly holds a $4.7

million lien claim against Black Dog Petroleum based on an unrecorded factoring agreement (the

"Southwind Factoring Agreement").

70.    The Southwind Factoring Agreement was entered into on or around January 1,

2018, before the Black Dog Petition Date.

71.    The Southwind Factoring Agreement was not disclosed in the Black Dog case,

including:

a.  Black Dog's Periodic Report Regarding Value Operations And Profitability of

Entities in Which the Estate Holds an Substantial or Controlling Interest

10

pursuant to Bankruptcy Rule 2015.3, which Gauri signed under oath; [*See* Case No. 19-28245, No. 35 (the "Rule 2015.3 Report").]

b.  Black Dog's Third Amended Disclosure Statement. [Case. No. 19-28245, Dkt. No. 210.]

c.  The financial statements produced by Black Dog and the Subsidiaries to Parent.

72.  Gauri also failed to disclose Southwind's multiple roles in Black Dog's operations: a factor of the Petroleum Receivables, an equipment lessor in connection with the recycling business, and manager and processor of billing and accounting for the recycling business.

## C.    **Gauri's Personal Bankruptcy**

73.  On March 22, 2021, Gauri filed an individual Chapter 11 bankruptcy petition.

74.  Gauri's Schedule E/F lists a unsecured non-contingent, liquidated, non-disputed claim in the amount of $2,894,808.68 held by Parent. [Dkt. No. 29.]

75.  The Court set a deadline of June 28, 2021, to file a complaint objecting to the dischargeability of debts pursuant to Bankruptcy Code section 523. [Dkt. No. 11.]

76.  No deadline has been established by the Bankruptcy Court for the filing of a complaint objecting to discharge pursuant to section 727.

77.  The Complaint is timely filed.

11

## IV.  CAUSES OF ACTION

### COUNT 1 - GAURI CONCEALED AND FALSIFIED INFORMATION FROM WHICH BLACK DOG'S FINANCIAL CONDITION MIGHT  BE ASCERTAINED PURSUANT TO 11 U.S.C. §§ 727(a)(3) and (a)(7)

78.      Parent realleges and restates Paragraphs 1 through 77 as though fully set forth

herein.

79.      Bankruptcy Code section 727(a)(7) provides that the court shall grant the debtor a

discharge unless "the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6)

of this subsection, on or within one year before the date of the filing of the petition. . . in

connection with another case, under this title or under the Bankruptcy Act, concerning an

insider." 11 U.S.C. § 727(a)(7).

80.      Debtor is an insider of Black Dog and the Subsidiaries.

81.      Bankruptcy Code section 727(a)(3) provides that the court shall grant the debtor a

discharge, unless "the debtor has concealed…[or] falsified…any recorded information, including

books, documents, records, and papers, from which the debtor's financial condition or business

transactions might be ascertained…"  11 U.S.C. § 727(a)(3).

### A.      Gauri Concealed the EIDL Loan.

82.      Gauri applied and was approved for the EIDL Loan on behalf of Black Dog

without court authority to enter into a post-petition financing agreement.

83.      Gauri, on behalf of Black Dog, granted the SBA a lien on all of Black Dog's

assets without authority from the bankruptcy court.

84.      As Black Dog's manager, Gauri had a duty to disclose the EIDL Loan in Black

Dog's monthly operating reports.

85.     Gauri caused Black Dog to conceal the EIDL Loan when Gauri executed under oath Black Dog's June Monthly Operating Report.

86.     As Black Dog's manager, Gauri had a duty to disclose the EIDL Loan in the Third Amended Disclosure Statement.

87.     Gauri concealed the EIDL Loan and the SBA lien on Black Dog's assets in the Third Amended Disclosure Statement.

88.     Gauri's concealment of the EIDL Loan, the proceeds thereto, and the SBA lien is material to Black Dog's financial condition or business transactions.

89.     Gauri acted with reckless disregard for the truth in failing to disclose the EIDL Loan, the EIDL Loan proceeds, and the SBA's lien against Black Dog's assets.

90.     Gauri's concealment of the EIDL Loan, the proceeds thereto, and the SBA Lien are not justified under the circumstances of the case.

**B.      Gauri Concealed the Wintrust Account.**

91.     As Black Dog's manager, Gauri signed Black Dog's bankruptcy schedules and monthly operating reports under oath.

92.     As Black Dog's manager, Gauri had a duty to disclose the Wintrust Account in Black Dog's schedules.

93.     Gauri concealed Black Dog's Wintrust Account by failing to disclose it in Black Dog's schedules filed at Docket Entries 23 and 39 in Black Dog's bankruptcy case.

94.     Gauri concealed Black Dog's Wintrust Account by failing to disclose it in Black Dog's monthly operating reports.

95.     Gauri's concealment of the Wintrust Account is material to Black Dog's financial condition or business transactions.

96.     Gauri acted with reckless disregard for the truth in failing to disclose the Wintrust Account.

97.     Gauri's concealment of the Wintrust Account is not justified under the circumstances of the case.

**C.     Gauri Falsified the PPP Loan Applications.**

98.     Gauri is the manager of Black Dog.

99.     Black Dog is the sole owner of the subsidiaries.

100.     As the sole owner of the subsidiaries, Black Dog selected Gauri as manager of the Subsidiaries.

101.     Gauri executed the PPP Loan Applications on behalf of each of the Subsidiaries.

(i).     Gauri Falsified Black Dog Petroleum's PPP Loan Application.

102.     Specifically, on or about April 20, 2021, Gauri signed the PPP Loan Application on behalf of Black Dog Petroleum seeking a loan in the amount of $300,400 from First Midwest Bank.

103.     Black Dog Petroleum's PPP Loan Application states:  "If questions (1) or (2) below are answered "Yes," the loan will not be approved."

104.     Question 1 on the Black Dog Petroleum's PPP Loan Application asked: "Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy?"

105.     In response to Question 1 on Black Dog Petroleum's PPP Loan Application, Gauri answered, "No."

14

106.    Black Dog Petroleum's PPP Loan Applications required Gauri to certify, and Gauri certified that: "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000."

107.    At the time Gauri completed Black Dog Petroleum's PPP Loan Application, Black Dog was a debtor in bankruptcy.

108.    Gauri falsified Black Dog Petroleum's PPP Loan Application by concealing therein that Black Dog was a debtor in bankruptcy.

109.    The falsification of Black Dog Petroleum's PPP Loan Application is material to Black Dog's financial condition or business transactions.

110.    Gauri's falsification of Black Dog Petroleum's PPP Loan Application constitutes a violation of federal law.

111.    Gauri acted in reckless disregard for the truth by failing to disclose Black Dog's pending bankruptcy case in Black Dog Petroleum's PPP Loan Application.

(ii).    <u>Gauri Falsified Black Dog Foods' PPP Loan Application</u>.

112.    On or about April 30, 2021, Gauri signed the PPP Loan Application on behalf of Black Dog Foods seeking a loan in the amount of $48,085 from First Midwest Bank.

113.    Black Dog Foods' PPP Loan Application states:  "If questions (1) or (2) below are answered "Yes," the loan will not be approved."

114.    Question 1 on the Black Dog Foods' PPP Loan Application asked: "Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy?"

115.    In response to Question 1 on Black Dog Foods' PPP Loan Application, Gauri answered, "No."

116.    Black Dog Foods' PPP Loan Applications required Gauri to certify, and Gauri certified that:  "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000."

117.    At the time Gauri completed Black Dog Foods' PPP Loan Application, Black Dog was a debtor in bankruptcy.

118.    Gauri falsified Black Dog Foods' PPP Loan Application by concealing therein that Black Dog was a debtor in bankruptcy.

119.    Gauri's falsification of the Black Dog Foods' PPP Loan Application is material to Black Dog's financial condition or business transactions.

120.     Gauri's falsification of Black Dog Foods' PPP Loan Application constitutes a violation of federal law.

121.     Gauri acted in reckless disregard for the truth by failing to disclose Black Dog's pending bankruptcy case in Black Dog Foods' PPP Loan Application.

(iii).     <u>Gauri Falsified Black Dog Solutions' PPP Loan Application</u>.

122.     On or about April 14, 2021, Gauri signed a PPP Loan Application on behalf of Black Dog Solutions seeking a loan in the amount of $58,645 from WebBank.

123.     Black Dog Solutions' PPP Loan Application states:  "If questions (1) or (2) below are answered "Yes," the loan will not be approved."

124.     Question 1 on the Black Dog Solutions' PPP Loan Application asked: "Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy?"

125.     In response to Question 1 on Black Dog Solutions' PPP Loan Application, Gauri answered, "No."

126.     Black Dog Solutions' PPP Loan Applications required Gauri to certify, and Gauri certified that: "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under

18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000."

127.     At the time Gauri completed Black Dog Solutions' PPP Loan Application, Black Dog was a debtor in bankruptcy.

128.     Gauri falsified Black Dog Solutions' PPP Loan Application by concealing therein that Black Dog was a debtor in bankruptcy.

129.     Gauri's falsification of the Black Dog Solutions' PPP Loan Application is material to Black Dog's financial condition or business transactions.

130.     Gauri's falsification of Black Dog Foods' PPP Loan Application constitutes a violation of federal law.

131.     Gauri acted in reckless disregard for the truth by failing to disclose Black Dog's pending bankruptcy case in Black Dog Solutions' PPP Loan Application.

132.     Gauri's falsification of the PPP Loan Applications are not justified under the circumstances of the case.

**D.      Gauri Concealed the PPP Loans.**

133.     Parent realleges and restates Paragraphs 1 through 132 as though fully set forth herein.

134.     Gauri concealed the PPP Loans by failing to disclose them in Black Dog's Third Amended Disclosure Statement.

135.     The concealment of the PPP Loans involves Black Dog's financial condition or business transactions.

136.     Gauri acted in reckless disregard for the truth by failing to disclose the PPP Loans in the Third Amended Disclosure Statement.

137.    Gauri's concealment of the PPP Loans is not justified under the circumstances of the case.

**E.    Gauri Concealed the Southwind Factoring Agreement.**

138.    Gauri signed Black Dog's Rule 2015.3 Report under oath, which provides information on the Subsidiaries' value, operations, and profitability. [Case No. 19-28245, Dkt. No. 35.]

139.    As Black Dog's manager, Gauri had a duty to disclose the Southwind Factoring Agreement in Black Dog's Rule 2015.3 Report.

140.    Gauri failed to disclose the Southwind Factoring Agreement and other necessary information about Southwind in the Rule 2015.3 Report.

141.    Gauri failed to disclose the Southwind Factoring Agreement and other necessary information about Southwind in the Disclosure Statement and exhibits thereto.

142.    Gauri's failure to disclose the Southwind Factoring Agreement and other necessary information about Southwind constitutes concealment.

143.    Gauri's concealment of the Southwind Factoring Agreement and the relationship with Southwind is material to Black Dog's financial condition or business transactions.

144.    Gauri acted with reckless disregard by failing to disclose the Southwind Factoring Agreement and other necessary information about Southwind in the Rule 2015.3 Report.

145.    Gauri acted with reckless disregard for the truth by failing to disclose the Southwind Factoring Agreement and other necessary information about Southwind in Disclosure Statement and exhibits thereto.

146.    Gauri's concealment of the Southwind Factor Agreement is not justified under the circumstances of the case.

**F.      Gauri Falsified Black Dog's Monthly Operating Reports.**

147.    Parent realleges and restates Paragraphs 1 through 146 as though fully set forth herein.

148.    As Black Dog's manager, Gauri had a duty to disclose the EIDL Loan in Black Dog's monthly operating reports.

149.    As Black Dog's manager, Gauri had a duty to disclose the Wintrust Account in Black Dog's monthly operating reports.

150.    As Black Dog's manager, Gauri signed Black Dog's monthly operating reports under oath.

151.    Black Dog's monthly operating reports are material to Black Dog's financial condition or business transactions.

152.    Gauri falsified Black Dog's June Monthly Operating Report by failing to disclose the EIDL Loan therein.

153.    Gauri falsified each of Black Dog's monthly operating reports by failing to disclose the Black Dog's Wintrust Account therein.

154.    Gauri acted with reckless disregard for the truth in failing to disclose the EIDL Loan in the June Monthly Operating Report.

155.    Gauri acted in reckless disregard for the truth in failing to disclose the Southwind Factoring Agreement in Black Dog's monthly operating reports.

156.    Gauri's falsification of the monthly operating reports is not justified under the circumstances of the case.

**G.      Gauri Falsified Black Dog's Rule 2015.3 Report.**

157.    Parent realleges and restates Paragraphs 1 through 156 as though fully set forth herein.

158.    As Black Dog's manager, Gauri had a duty to fully and truthfully complete the Rule 2015.3 Report.

159.    The Southwind Factoring Agreement is material to Black Dog's financial condition or business transactions.

160.    Gauri falsified Black Dog's Rule 2015.3 Report by failing to disclose the Southwind Factoring Agreement.

161.    Gauri acted with reckless disregard for the truth in failing to disclose the Southwind Factoring Agreement in Black Dog's Rule 2015.3 Report.

162.    Gauri's failure to disclose the Southwind Factoring Agreement is not justified under the circumstances of the case.

**H.      Gauri Falsified Black Dog's Third Amended Disclosure Statement.**

163.    Parent realleges and restates Paragraphs 1 through 162 as though fully set forth herein.

164.    As Black Dog's manager, Gauri had a duty to fully and truthfully disclose the EIDL Loan in Black Dog's Third Amended Disclosure Statement.

165.    As Black Dog's manager, Gauri had a duty to fully and truthfully disclose the PPP Loans in Black Dog's Third Amended Disclosure Statement.

166.    As Black Dog's manager, Gauri had a duty to fully and truthfully disclose the Southwind Factoring Agreement in Black Dog's Third Amended Disclosure Statement.

167.    The Third Amended Disclosure Statement was a document from which Black Dog's financial condition could be ascertained.

168.    Gauri falsified the Third Amended Disclosure Statement by failing to disclose the EIDL Loan therein.

169.    Gauri acted with reckless disregard for the truth in failing to disclose the EIDL Loan in the Third Amended Disclosure Statement.

170.    Gauri falsified the Third Amended Disclosure Statement by failing to disclose the PPP Loans therein.

171.    Gauri acted with reckless disregard for the truth in failing to disclose the PPP Loans in the Third Amended Disclosure Statement.

172.    Gauri falsified the Third Amended Disclosure Statement by failing to disclose the Southwind Factoring Agreement therein.

173.    Gauri acted with reckless disregard for the truth in failing to disclose the Southwind Factoring Agreement in the Third Amended Disclosure Statement.

174.    Gauri's falsification of the Third Amended Disclosure Statement is not justified under the circumstances.

**Wherefore**, Parent requests that this Court enter an order denying Gauri's discharge for Counts 1(A), 1(B), 1(C), 1(D), 1(E), 1(F), 1(G), and 1(H) pursuant to 11 U.S.C. §§ 727(a)(3) and (a)(7) and granting such further relief as is just and proper.

### COUNT 2 - GAURI KNOWINGLY AND FRAUDULENTLY MADE FALSE OATHS IN OR IN CONNECTION WITH THE BLACK DOG CASE PURSUANT TO 11 U.S.C. § 727(a)(4)(A) and (a)(7)

175.    Parent realleges and restates Paragraphs 1 through 174 as though fully set forth herein.

22

176.    Bankruptcy Code section 727(a)(7) provides that the court shall grant the debtor a discharge unless "the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider." 11 U.S.C. § 727(a)(7).

177.    Gauri is an insider of Black Dog and the Subsidiaries.

178.    Bankruptcy Code section 727(a)(4)(A) provides that the court shall grant the debtor a discharge unless "the debtor knowingly and fraudulently, in or in connection with the case made a false oath." 11 U.S.C. § 727(a)(4)(A).

**A.     Gauri Knowingly and Fraudulently Made a False Oath by Failing to Disclose the EIDL Loan.**

179.    Gauri applied and was approved for the EIDL Loan on behalf of Black Dog after Black Dog's the Petition Date.

180.    Black Dog's acquisition of the EIDL Loan constituted an act outside of the ordinary course of business of Black Dog.

181.    Black Dog was required to obtain court approval pursuant to Bankruptcy Code section 364(c) in order to obtain the EIDL Loan.

182.    Gauri signed the June 2020 Monthly Operating Report declaring under oath that the figures, statements, disbursements itemizations, and account balances as listed in the June Monthly Operating Report of the Debtor are true and correct. [Case No. 19-28245, Dkt. No. 194.]

183.    The EIDL Loan is material to Black Dog's financial condition.

184.    Gauri intentionally failed to disclose the EIDL Loan and proceeds thereof on the June Monthly Operating Report.

185.    Gauri knowingly and fraudulently and with intent to deceive made a false oath by failing to disclose the EIDL Loan and the proceeds thereof on the June Monthly Operating Report.

186.    Gauri acted with reckless disregard for the truth in failing to disclose the EIDL Loan and the proceeds thereof on the June Monthly Operating Report.

**B.    Gauri Knowingly and Fraudulently Made a False Oath by Failing to Disclose Wintrust Account.**

187.    Gauri signed Black Dog's bankruptcy schedules under oath.

188.    Gauri signed Black Dog's monthly operating reports under oath.

189.    Gauri intentionally failed to disclose the Wintrust Account in Black Dog's schedules until Parent discovered the account approximately eleven months after the Black Dog Petition Date.

190.    Gauri knowingly and fraudulently and with intent to deceive made a false oath by failing to disclose the Wintrust Account in Black Dog's bankruptcy schedules and monthly operating reports.

191.    Gauri acted with reckless disregard for the truth in failing to disclose the Wintrust Account in Black Dog's bankruptcy schedules, SOFA, and Monthly Operating Reports.

**C.    Gauri Knowingly and Fraudulently Made a False Oath in Obtaining the PPP Loans.**

192.    At the time Gauri filed the PPP Loan applications on behalf of the Subsidiaries, Black Dog was a debtor in bankruptcy.

193.    Black Dog is the owner of the Subsidiaries.

194.    The PPP Loans are material to Black Dog's financial condition or business transactions.

195.    The PPP Loan Applications required Gauri to certify that he "unders[tood] that knowingly making a false statement to obtain a guaranteed loan from the SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571…"

196.    Gauri certified in the PPP Loan Applications that the owner of the applicants was not presently involved in any bankruptcy.

197.    Gauri knowingly and fraudulently and with intent to deceive made a false oath in each of the PPP Loan Applications when Gauri certified that Black Dog, as the owner of Black Dog Petroleum, Black Dog Foods, and Black Dog Solutions, was not presently involved in any bankruptcy.

**D.    Gauri Knowingly and Fraudulently Made a False Oath in Failing to Disclose the Southwind Factoring Agreement.**

198.    As Black Dog's manager, Gauri signed the Rule 2015.3 Report under oath.

199.    The Rule 2015.3 Report provides information on the Subsidiaries' value, operations, and profitability.

200.    The Rule 2015.3 Report is material to Black Dog's financial condition or business transactions.

201.    As Black Dog's manager, Gauri had a duty to fully and truthfully complete the Rule 2015.3 Report.

202.    Gauri knowingly and fraudulently and with intent to deceive made a false oath by failing to disclose the Southwind Factoring Agreement and other necessary information about Southwind in the Rule 2015.3 Report.

203.    Gauri acted with reckless disregard for the truth by failing to disclose the Southwind Factoring Agreement and other necessary information about Southwind in the Rule 2015.3 Report.

204.    Gauri acted with reckless disregard for the truth by failing to disclose the Southwind Factoring Agreement and other necessary information about Southwind in Disclosure Statement and exhibits thereto.

**Wherefore**, Parent requests that this Court enter an order denying Gauri's discharge based on Count 2(A), 2(B), 2(C) and 2(D) pursuant to 11 U.S.C. §§ 727(a)(4)(A) and (a)(7) and granting such further relief as is just and proper.

### COUNT 3 - GAURI CONCEALED AND TRANSFERRED PROPERTY OF THE ESTATE IN THE BLACK DOG CASE WITH THE INTENT TO HINDER, DELAY, OR DEFRAUD PURSUANT TO 11 U.S.C. § 727(a)(2) and (a)(7)

205.    Parent realleges and restates Paragraphs 1 through 204 as though fully set forth herein.

206.    Bankruptcy Code section 727(a)(7) provides that the court shall grant the debtor a discharge unless "the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider." 11 U.S.C. § 727(a)(7).

207.    Debtor is an insider of Black Dog and the Subsidiaries.

208.    Bankruptcy Code section 727(a)(2) provides that the court shall grant the debtor a discharge unless "the debtor, with intent to hinder, delay, or defraud a creditor. . . has transferred. . . or concealed. . . (B) property of the estate, after the date of the filing of the petition." 11 U.S.C. § 727(a)(2).

**A.    Gauri Concealed and Transferred the EIDL Loan, the Proceeds Therefrom, and the SBA Lien with Intent to Hinder, Delay, or Defraud Parent.**

209.    Gauri intentionally obtained the EIDL Loan on behalf of Black Dog.

210.    Gauri obtained the EIDL Loan without court approval.

26

211.    Gauri's failure to obtain court approval for the EIDL Loan constitutes

concealment.

212.    Gauri intentionally caused Black Dog to grant the SBA a lien on Black Dog's

assets to secure the EIDL Loan.

213.    Gauri granted the SBA a lien on Black Dog's assets without court approval.

214.    The SBA lien securing EIDL Loan constitutes a transfer of an interest in property

of the Black Dog estate.

215.    Gauri's failure to obtain court approval to grant the SBA a lien on Black Dog's

assets constitutes concealment.

216.    The proceeds of the EIDL loan are property of the Black Dog estate.

217.    Gauri transferred the EIDL Loan proceeds without court approval.

218.    Gauri's transfer of the EIDL Loan proceeds without court approval constitutes

concealment.

219.    Gauri failed to disclose the receipt of the EIDL loan proceeds in the June Monthly

Operating Report.

220.    Gauri's failure to disclose the receipt of the EIDL Loan proceeds in the June

Monthly Operating Report proceeds constitutes concealment.

221.    Gauri failed to disclose the transfer of the EIDL Loan proceeds in the monthly

operating reports.

222.    Gauri's failure to disclose the transfer of the EIDL Loan proceeds in the monthly

operating reports proceeds constitutes concealment.

223.    Gauri failed to disclose the EIDL Loan in the Third Amended Disclosure

Statement.

224.    Gauri's failure to disclose the transfer of the EIDL Loan proceeds in the Third Amended Disclosure Statement constitutes concealment.

225.    Gauri failed to the disclose the transfer of the lien to the SBA on property of the Black Dog Estate in the Third Amended Disclosure Statement.

226.    Gauri's failure to disclose the transfer of the lien to the SBA on property of the Black Dog Estate in the Third Amended Disclosure Statement constitutes concealment.

227.    Gauri acted with the intent to hinder, delay, or defraud Parent by concealing the EIDL Loan from the court.

228.    Gauri acted with reckless disregard for the truth in failing to disclose the EIDL Loan to the Court.

229.    Gauri acted with the intent to hinder, delay, or defraud Parent by concealing the SBA lien on Black Dog's assets from the court.

230.    Gauri acted with reckless disregard for the truth in failing to disclose the SBA's lien on Black Dog's assets to the court.

231.    Gauri acted with the intent to hinder, delay, or defraud Parent by concealing the receipt of the EIDL Loan proceeds in the June Monthly Operating Report.

232.    Gauri acted with reckless disregard for the truth in failing to disclose the receipt of the EIDL Loan proceeds in the June Monthly Operating Report.

233.    Gauri acted with the intent to hinder, delay, or defraud Parent by concealing the receipt of the EIDL Loan in the Third Amended Disclosure Statement.

234.    Gauri acted with reckless disregard for the truth in failing to disclose the receipt of the EIDL Loan in the Third Amended Disclosure Statement.

235.    Gauri acted with the intent to hinder, delay, or defraud Parent by concealing the SBA lien on Black Dog's assets in the Third Amended Disclosure Statement.

236.    Gauri acted with reckless disregard for the truth in failing to disclose the SBA lien on Black Dog's assets in the Third Amended Disclosure Statement.

237.    Gauri acted with the intent to hinder, delay, or defraud Parent by transferring the EIDL Loan proceeds without court approval.

238.    Gauri acted with reckless disregard for the truth in failing to disclose the disposition of the EIDL Loan proceeds.

239.    Gauri acted with the intent to hinder, delay, or defraud Parent by transferring to the SBA a lien on property of the Black Dog estate without court approval.

240.    Gauri acted with reckless disregard for the truth by transferring to the SBA a lien on property of the Black Dog estate without court approval.

### C.    Gauri Concealed the Wintrust Account and Concealed and Transferred Cash into and out of the Wintrust Account, Each with the Intent to Hinder, Delay, or Defraud Parent.

241.    Gauri failed to disclose the Wintrust Account in Black Dog's bankruptcy schedules filed with the court prior to September 9, 2020.

242.    On August 5, 2020, Parent served a subpoena on Wintrust seeking, among other things, copies of account statements for Black Dog's bank accounts and obtained copies of the Wintrust Account.

243.    On September 9, 2020, Gauri amended Black Dog's schedules to disclose the Wintrust Account.

244.    Gauri intentionally failed to disclose the Wintrust Account in Black Dog's bankruptcy schedules until September 9, 2020.

245.    Gauri's failure to disclose the Wintrust Account in Black Dog's schedules until September 9, 2020, constitutes concealment.

246.    Gauri failed to disclose the Wintrust Account in Black Dog's monthly operating reports.

247.    Gauri intentionally failed to disclose the Wintrust Account in Black Dog's monthly operating reports.

248.    Gauri's failure to disclose the Wintrust Account in Black Dog's monthly operating reports constitutes concealment.

249.    After Black Dog's Petition Date, Gauri deposited funds into the Wintrust Account ("Post-Petition Wintrust Deposits").

250.    After Black Dog's Petition Date, Gauri intentionally made the Post-Petition Wintrust Deposits.

251.    The Post-Petition Wintrust Deposits constitute property of Black Dog's bankruptcy estate.

252.    Gauri failed to disclose the Post-Petition Wintrust Deposits in Black Dog's monthly operating reports.

253.    Gauri intentionally failed to disclose the Post-Petition Wintrust Deposits in Black Dog's monthly operating reports.

254.    Gauri's failure to disclose the Post-Petition Wintrust Deposits in Black Dog's monthly operating reports constitutes concealment.

255.    After Black Dog's Petition Date, Gauri transferred funds out of the Wintrust Account ("Post-Petition Wintrust Transfers").

256.    After Black Dog's Petition Date, Gauri intentionally made the Post-Petition Wintrust Transfers.

257.    The Post-Petition Wintrust Transfers constitute property of Black Dog's bankruptcy estate.

258.    Gauri intentionally failed to disclose the Post-Petition Wintrust Transfers in Black Dog's monthly operating reports.

259.    Gauri's failure to disclose the Post-Petition Wintrust Transfers constitutes concealment.

260.    Gauri caused Black Dog to conceal the Wintrust Account from Black Dog's schedules until September 9, 2020, with intent to hinder, delay, or defraud Parent.

261.    Gauri caused Black Dog to conceal the Wintrust Account from Black Dog's monthly operating reports with intent to hinder, delay, or defraud Parent.

262.    Gauri caused Black Dog to conceal the Post-Petition Wintrust Deposits from Black Dog's monthly operating reports with intent to hinder, delay, or defraud Parent.

263.    Gauri caused Black Dog to conceal the Post-Petition Wintrust Transfers from Black Dog's monthly operating reports with intent to hinder, delay, or defraud Parent.

264.    Gauri acted with reckless disregard for the truth in failing to disclose the Wintrust Account in Black Dog's schedules until September 9, 2020.

265.    Gauri acted with reckless disregard for the truth in failing to disclose the Wintrust Account in Black Dog's monthly operating reports.

266.    Gauri acted with reckless disregard for the truth in failing to disclose the Post-Petition Wintrust Deposits in Black Dog's monthly operating reports.

267.     Gauri acted with reckless disregard for the truth in failing to disclose the Post-Petition Wintrust Transfers in Black Dog's monthly operating reports.

**D.     Gauri Concealed the Insider Transfers with the Intent to Hinder, Delay, or Defraud Parent.**

268.     Gauri caused Black Dog to conceal the $282,074.70 in Insider Transfers from Black Dog to Gauri on Black Dog's SOFA.

269.     The Insider Transfers constituted material transfers of property of Black Dog's estate.

270.     Gauri only caused Black Dog to amend its SOFA to disclose the Insider Transfers eleven months after the Black Dog Petition Date because Parent discovered the Insider Transfers.

271.     Gauri's delay in causing Black Dog to amend its SOFA evidences Gauri's intent to hinder, delay, or defraud Parent.

272.     Gauri acted with reckless disregard for the truth in failing to disclose the Insider Transfers.

273.     Gauri's concealment of the Insider Transfers was with the intent to hinder, delay, or defraud Parent.

**Wherefore**, Parent requests that this Court enter an order denying Gauri's discharge based on Counts 3(A), 3(B) 3(C) and 3(D) pursuant to 11 U.S.C. §§ 727(a)(2) and (a)(7) and granting such further relief as is just and proper.

**COUNT 4 - GAURI REFUSED TO OBEY A LAWFUL ORDER OF THE COURT IN THE BLACK DOG CASE PURSUANT TO 11 U.S.C. § 727(a)(6) and (a)(7)**

274.     Parent realleges and restates Paragraphs 1 through 273 as though fully set forth herein.

275.    Bankruptcy Code section 727(a)(7) provides that the court shall grant the debtor a discharge unless "the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider." 11 U.S.C. § 727(a)(7).

276.    Gauri is an insider of Black Dog and the Subsidiaries.

277.    Bankruptcy Code section 727(a)(6) provides that the court shall grant the debtor a discharge unless "the debtor has refused, in the case— (A) to obey any lawful order of the court, other than an order to respond to a material question or to testify." 11 U.S.C. 727(a)(6).

278.    The Court entered the Case Management Procedures order on October 21, 2020.

279.    The Case Management Procedures prohibited Black Dog Petroleum and Black Dog Foods, LLC from making a payment or transfer on behalf of Gauri or paying any non-ordinary course business trade payables.

280.    Despite the Case Management Procedures, Gauri caused Black Dog Petroleum to make an unauthorized transfer on March 22, 2021, to pay Bauch & Michaels, LLC a retainer of $21,717 for services to be provided in Gauri's individual bankruptcy case.

281.    Gauri refused to obey a lawful order of the Court by violating the Case Management Procedures.

**Wherefore**, Parent requests that this Court enter an order denying Gauri's discharge based on Count 4 pursuant to 11 U.S.C. §§ 727(a)(6) and (a)(7) and granting such further relief as is just and proper.

**COUNT 5 - GAURI FAILED TO EXPLAIN SATISFACTORILY ANY LOSS OF
ASSETS TO MEET BLACK DOG'S LIABILITIES
PURSUANT TO 11 U.S.C. 727(a)(5) and (a)(7)**

282.     Parent realleges and restates Paragraphs 1 through 281 as though fully set forth

herein.

283.     Bankruptcy Code section 727(a)(7) provides that the court shall grant the debtor a

discharge unless "the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6)

of this subsection, on or within one year before the date of the filing of the petition, or during the

case, in connection with another case, under this title or under the Bankruptcy Act, concerning an

insider." 11 U.S.C. § 727(a)(7).

284.     Gauri is an insider of Black Dog and the Subsidiaries.

285.     Bankruptcy Code section 727(a)(5) provides that the court shall grant the debtor a

discharge unless "the debtor has failed to explain satisfactorily, before determination of denial of

discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's

liabilities." 11 U.S.C. § 727(a)(5).

**A.     The Missing EIDL Loan Proceeds.**

286.     Gauri applied and was approved for the EIDL Loan on behalf of Black Dog

without court authority.

287.     The EIDL Loan is material to Black Dog's financial condition or business

transactions.

288.     Gauri failed to explain the disposition of the EIDL Loan proceeds satisfactorily.

**B.     The Missing Southwind Proceeds.**

289.     Black Dog Petroleum entered into the Southwind Factoring Agreement before the

Black Dog Petition Date.

290.    Black Dog Petroleum received millions in cash in exchange for an assignment of their accounts receivable.

291.    As of October 27, 2020, Black Dog Petroleum's outstanding indebtedness to Southwind totals approximately $4.7 million.

292.    The Southwind Proceeds are material to Black Dog's financial condition or business transactions.

293.    Gauri failed to explain the disposition of the of the Southwind Proceeds satisfactorily.

**Wherefore**, Parent requests that this Court enter an order denying Gauri's discharge based on Counts 5(A) and 5(B) pursuant to 11 U.S.C. §§ 727(a)(5) and (a)(7) and granting such further relief as is just and proper.

### COUNT 6 - GAURI OBTAINED AN EXTENSION OR REFINANCING OF CREDIT USING A MATERIALLY FALSE STATEMENT THAT PARENT REASONABLY RELIED ON PURSUANT TO 11 U.S.C. § 523(a)(2)(B).

294.    Parent realleges and restates Paragraphs 1 through 293 as though fully set forth herein.

295.    Bankruptcy Code section 523(a)(2)(B) provides that a discharge under Bankruptcy Code section 1141 does not discharge an individual debtor from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . (B) use of a statement in writing— (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive."  11 U.S.C. 523(a)(2)(B).

296.    Gauri is an individual.

**A.     Gauri Obtained a Refinancing of Credit Through Materially False Statement in Writing.**

297.    Gauri and Parent regularly communicated through email or other written correspondence.

298.    On information and belief, Gauri provided statements in writing about Black Dog and/or Subsidiaries to Parent to obtain a refinancing and further extension of credit under the Agreement in 2016.

299.    On information and belief, the written statement involved Black Dog and/or Subsidiaries' financial information, customer contracts, repayment of the Parent receivables, future revenue sources, and other information.

300.    On information and belief, Gauri's statements in writing were materially false.

301.    The statements in writing involved the debtor or an insider's financial condition.

302.    Parent reasonably relied on the materially false statements in writing.

303.    Gauri provided the statements in writing with the intent to deceive.

**B.     Gauri Obtained Credit by Providing Materially False Information to Parent.**

304.    Gauri and Parent regularly communicated through email or other written correspondence.

305.    On information and belief, Gauri provided materially false and inaccurate statements in writing reflecting Black Dog and financial information to Parent to obtain an extension of credit.

306.    The extension of credit was additional receivables or credit throughout the business relationship of Parent and Black Dog.

307.    On information and belief, the written statement involved Black Dog and/or Subsidiaries' financial information, customer contracts, repayment of the Parent receivables, future revenue sources, and other information.

308.    The inaccurate financial information was a statement in writing.

309.    The inaccurate financial information was materially false.

310.    The inaccurate financial information involved the debtor or an insider's financial condition.

311.    Parent reasonably relied on the inaccurate financial information.

312.    Gauri provided the inaccurate financial information with the intent to deceive Parent.

**Wherefore**, Parent requests that this Court enter an order denying the dischargeability of Gauri's debt to Parent based on Counts 6(A) and 6(B) pursuant to 11 U.S.C. § 523(a)(2)(B) and granting such further relief as is just and proper.

PARENT PETROLEUM, INC.,

By its attorneys,


 */s/ James B. Sowka*
SEYFARTH SHAW, LLP
James B. Sowka (IL Bar No. 6291998)
233 S. Wacker St. Suite 8000
Chicago, IL  60606
Telephone:  (312) 460-5000
Facsimile:  (312) 460-7000
jsowka@seyfarth.com

Dated:  June 28, 2021